In the

# United States Court of Appeals

## For the Seventh Circuit

───────────────

No. 17-1058

1ST SOURCE BANK,

*Plaintiff-Appellee,*

*v.*

JOAQUIM SALLES LEITE NETO,

*Defendant-Appellant.*

───────────────

Emergency Motion for Judgment
Pending Appeal from the U.S. District Court for the
Northern District of Indiana, South Bend Division.
No. 3:15-cv-00261 — **William C. Lee**, *Judge.*

───────────────

MARCH 30, 2017

───────────────

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Defendant Joaquim Neto, an international businessman from Brazil, entered into a trust agreement with Wells Fargo Bank in 2009 to purchase an aircraft for use in his business. Wells Fargo borrowed $6 million from plaintiff 1st Source Bank (a major Indiana bank), pledging the aircraft as collateral, and Neto signed a person-

al guarantee backing the loan. Three years later the Brazilian tax authorities seized the plane as part of an investigation into Neto's attempt to avoid paying Brazilian import tax. Neto continued to pay the amount due on the loan until December 2014, but after he stopped paying, 1st Source sued him in a federal district court in Indiana, basing jurisdiction on diversity of citizenship. 1st Source filed a second lawsuit in July 2016 in Brazil, where the plane resides.

In December 2016 Neto moved the district court in Indiana to enjoin the Brazilian lawsuit on the grounds that the language of the guarantee did not permit duplicative litigation and that the Brazilian litigation was "vexatious and oppressive." 1st Source opposed the motion, countering that the express language in the guarantee gives it "sole and exclusive discretion" to pursue litigation where the assets (primarily, perhaps exclusively, the plane) are held (Brazil), in addition to litigating in Indiana. Brazilian law permits a prejudgment attachment of assets that would give Neto only three days to pay the debt after being served with a summons, and if he failed to comply the court would be entitled to seize as many assets as necessary to guarantee payment of the debt, though Neto could file a motion to stay the seizure within 15 days after the issuance of the summons, advancing defenses such as unfeasible or undue obligation, inaccurate attachment, excessive execution, or the court's lack of jurisdiction.

The district court denied Neto's motion, reasoning that "it ma[de] perfect sense, from a business standpoint" for 1st Source to have included a clause in the guarantee, authorizing it to pursue legal proceedings in any jurisdiction in which its collateral was located. Remarking that "Indiana

courts zealously defend the freedom to contract," *State v. Int'l Business Machines Corp.*, 51 N.E.3d 150, 160 (Ind. 2016) (citation omitted), the judge rejected Neto's argument that having to defend the two actions was unduly burdensome because as part of the Indiana litigation Neto had had to travel to Chicago from Brazil for a mediation session (which had involved another case as well) and a deposition immediately before the mediation session.

Neto appealed the denial and moved the district court for an emergency injunction pending appeal, on the ground that 1st Source intended to serve its summons on him in the Brazil case forthwith and that upon service of the summons he would have only three days within which to pay the alleged amount due—and if he missed that tight deadline his assets (enough to pay the debt) would be seized. The district court denied the motion on the ground that although the Brazilian prejudgment attachment would freeze Neto's assets he hadn't shown a sufficient likelihood of prevailing on his claim that the Brazilian litigation was improper to warrant our interfering with that litigation. Neto then turned to the appellate court, asking us for an emergency stay of the Brazilian proceeding during his appeal. We denied his motion three days later, promising an explanation to follow.

Neto argues that 1st Source shouldn't be allowed to sue him wherever he has assets, for that he argues would undermine the purpose of a forum selection clause, and there is such a clause in the guarantee that Neto signed agreeing to back the loan that 1st Source had made to Wells Fargo to pay for the plane. The clause selects the federal court for the Southern District of Indiana for "all legal proceedings in connection with this guarantee," but it goes on to state—

crucially—that 1st Source reserves the option to sue Neto, for the money he owes the bank, "in any jurisdiction where the aircraft may be located."

Neto expresses fear that the district court's ruling permits 1st Source to sue him all over the world, raising the specter of inconsistent judgments or piecemeal litigation. But that specter is insufficiently concrete to warrant an emergency injunction. It's true as he reminds us that we allow an injunction against litigating in a foreign forum if the foreign suit would be gratuitously duplicative of pending domestic litigation. *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 431 (7th Cir. 1993). But he has not provided sufficient information about the nature of the Brazilian lawsuit to support his contention that it is identical to or duplicative of the Indiana suit. Cf. *id.* at 429. And he has neither responded to the bank's contention that he can ask the Brazilian court to stay the case before it, cf. *id.* at 431, nor explained why he can't present a defense to the seizure of the plane within the 15 days (not 3 days) allowed by Brazilian procedure.

His emergency motion for an injunction pending appeal is therefore denied.